Case 4:15-cv-00630   Document 31   Filed in TXSD on 11/06/15   Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
November 06, 2015
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CORDELL LINDSEY, JR., § | |
| and ROBERT L. WILSON, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. H-15-630 |
| § | |
| HARRIS COUNTY, et al., § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION**

Pending before the court[1] is Plaintiffs' Motion for Class Certification (Doc. 21). The court has considered the motion, the response, and the applicable law. For the reasons set forth below, the court **DENIES** Plaintiffs' motion.

**I. Case Background**

Plaintiffs Cordell Lindsey, Jr., ("Lindsey") and Robert L. Wilson, ("Wilson") former officers employed by Harris County Constable's Office Precinct 3 ("Precinct 3"), jointly filed this action against Defendants Harris County, Ken Jones ("Jones") and John Ray Harrison ("Harrison") in their official and individual capacities, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., Title VII of the Civil Rights Act of 1964, ("Title VII")[2] and for retaliation under 42 U.S.C. § 1981 and 1983.

---

[1]  The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docs. No. 19, 20.

[2]  42 U.S.C. §§ 2000e-2000e-17.

Lindsey additionally filed a claim of age discrimination under the Age Discrimination in Employment Act[3] ("ADEA").

## A. Procedural History

Plaintiffs filed this lawsuit against Defendants on March 3, 2015, alleging willful violations of Title VII and the ADEA, along with allegations of retaliation.[4] On June 24, 2015, Plaintiffs amended their complaint, alleging that Harris County and Jones denied Plaintiffs and prospective class members overtime in violation of the FLSA.[5]

Plaintiffs filed the pending motion for conditional class certification on October 2, 2015,[6] seeking to certify the following class: "All current and former non-exempt law enforcement officers who worked at Harris County Constable's Office for Precinct 3 anytime during the last three years."[7] In the motion, Plaintiffs ask the court to: (1) conditionally certify this suit as a collective action; (2) order Defendants to produce within ten days, all names, addresses, phone numbers, and email addresses of all potential class-members; and (3) authorize and approve notice to be

---

[3]   29 U.S.C. §§ 621-634.

[4]   See Doc. 1, Pls.' Compl.

[5]   See Doc. 3, Pls.' 1st Am. Compl.

[6]   See Doc. 21, Pls.' Mot. to Certify Class.

[7]   Doc. 21-7, Ex. G to Pls.' Mot. to Certify Class, Proposed Notice.

sent to class-members.[8]

On October 23, 2015, Defendants filed a response to Plaintiffs' motion for class certification.[9] The same day, Defendants filed objections to Plaintiffs' conditional certification exhibits.[10]

**B. Factual History**

The following account is derived from Plaintiffs' complaint and the exhibits attached to the pending motion and is limited to the facts supporting Plaintiffs' FLSA claims.

Lindsey was hired by Precinct 3 in 2002.[11] On March 15, 2010, Lindsey was promoted to Lieutenant.[12] On May 16, 2013, Lindsey and his attorney met with Harrison following a citizen complaint.[13] On May 24, 2013, Jones terminated Lindsey pursuant to the precinct's investigation.[14]

Wilson was employed by Precinct 3 as a deputy beginning in 2011.[15] Captain Jonathan Moore ("Moore") stated that Wilson worked as a Community Services Deputy from May 2012 until his

---

[8]  See Doc. 21, Pls.' Mot. to Certify Class p. 23.

[9]  See Doc. 27, Defs.' Resp. to Pl.'s Mot. to Certify Class.

[10] See Doc. 20, Defs.' Mot. for Leave to File Original Countercl.

[11] See Doc. 3, Pls.' 1st Am. Compl. p. 5.

[12] See id. pp. 5-6.

[13] See id. pp. 6-7.

[14] See id. p. 6.

[15] See id. p. 7.

termination.[16] In 2013, Wilson was directed to give up employment outside the precinct.[17] Shortly after Wilson gave up his secondary employment, Constable Jones terminated Wilson's employment on June 25, 2013, stating he did so because Wilson "engaged in criminal activity."[18]

Plaintiffs allege that all officers were instructed not to record all the hours they actually worked, but to instead report forty hours worked each week.[19] Plaintiffs allege that as a result, Harris County failed to pay officers their required overtime.[20] Plaintiffs state that they feared being retaliated against if they reported all of the time they worked.[21] Plaintiffs allege that they were required to work hours "off the clock," if an incident began during their shift and lasted beyond the end of their shift.[22] Plaintiffs also allege that they were requested to work outside of their shifts for special events and holidays, and that while they were promised "comp time" for these hours, they were not paid time and a half, instead receiving hour-for-hour compensation in

---

[16] See Doc. 27-2, Ex. B to Defs.' Mot. in Opp'n to Class Certification, Aff. of Jonathan Moore p. 5.

[17] See Doc. 3, Pls.' 1st Am. Compl. p. 8.

[18] See id.

[19] See id. p. 9.

[20] See id.

[21] See Doc. 21-1, Ex. A to Pl.'s Mot. to Certify Class, Aff. of Lindsey p. 3, Doc. 21-2, Ex. B to Pl.'s Mot. to Certify Class, Aff. of Wilson p. 3.

[22] See id.

exchange for working additional hours.[23]

## II. Legal Standard

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours. 29 U.S.C. § 207(a).  It allows employees to bring an action against their employers for violation of its hour and wage provisions.  See 29 U.S.C. §§ 215-216.  An employee may bring this action against his employer on "behalf of himself . . . and other employees similarly situated.  No employee shall be a party plaintiff to any such an action unless he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).  Courts have the authority to implement the representative action process by facilitating notice to potential plaintiffs, i.e., to persons alleged to be "similarly situated" to the named plaintiff(s).  Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989).

In the Fifth Circuit, the determination of whether plaintiffs are "similarly situated" is generally made by using one of two analyses: (1) the two-step analysis described in Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987), or (2) the "spurious class action" analysis described in Shushan v. Univ. of Colo., 132 F.R.D. 263 (D. Colo. 1990).  See Mooney v. Aramco Servs. Co., 54

---

[23] See Doc. 21-1, Ex. A to Pl.'s Mot. to Certify Class, Aff. of Lindsey pp. 3-4, Doc. 21-2, Ex. B to Pl.'s Mot. to Certify Class, Aff. of Wilson pp. 3-4.

exchange for working additional hours.[23]

## II. Legal Standard

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours.  29 U.S.C. § 207(a).  It allows employees to bring an action against their employers for violation of its hour and wage provisions.  See 29 U.S.C. §§ 215-216.  An employee may bring this action against his employer on "behalf of himself . . . and other employees similarly situated.  No employee shall be a party plaintiff to any such an action unless he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).  Courts have the authority to implement the representative action process by facilitating notice to potential plaintiffs, i.e., to persons alleged to be "similarly situated" to the named plaintiff(s).  Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989).

In the Fifth Circuit, the determination of whether plaintiffs are "similarly situated" is generally made by using one of two analyses: (1) the two-step analysis described in Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987), or (2) the "spurious class action" analysis described in Shushan v. Univ. of Colo., 132 F.R.D. 263 (D. Colo. 1990).  See Mooney v. Aramco Servs. Co., 54

---

[23] See Doc. 21-1, Ex. A to Pl.'s Mot. to Certify Class, Aff. of Lindsey pp. 3-4, Doc. 21-2, Ex. B to Pl.'s Mot. to Certify Class, Aff. of Wilson pp. 3-4.

F.3d 1207, 1216 (5th Cir. 1995)(expressly declining to decide which of the two analyses is appropriate)(overruled on other grounds by Desert Palace Inc. v. Costa, 539 U.S. 90 (2003)).[24]

Under the Lusardi approach, the court first "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010) (citing Mooney, 54 F.3d at 1213-14). The court makes this determination by using a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Mooney, 54 F.3d at 1214 & n.8. If the court determines that the employees are similarly situated, then notice is sent and new plaintiffs may "opt in" to the lawsuit. Acevedo, 600 F.3d at 519 (citing Mooney, 54 F.3d at 1214). Next, once discovery has largely been completed, and, thus, more information on the case made available, the court makes a final determination on whether the plaintiffs are similarly situated and whether they can proceed together in a single action. Id.

According to the Fifth Circuit, the Shushan approach, known as the "spurious class action" analysis, is similar to the class

---

[24] Mooney v. Aramco Services Co. was an action under the Age Discrimination in Employment Act ("ADEA"), but it is informative here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees. See Mooney, 54 F.3d at 1212.

certification procedure used under Federal Rule of Civil Procedure 23 ("Rule 23"):

> <u>Shushan</u> espouses the view that [29 U.S.C. § 216(b) ("Section 216(b)")] merely breathes new life into the so-called "spurious" class action procedure previously eliminated from [Rule 23]. Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA . . . context, but merely desired to limit the availability of Rule 23 class action relief under . . . [the FLSA]. In application, the court determined that Congress intended the "similarly situated" inquiry to be coextensive with Rule 23 class certification. In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified. Under this methodology, the primary distinction between a . . . [FLSA] representative action and a [Rule 23] class action is that persons who do not elect to opt-in to the . . . [FLSA] representative action are not bound by its results. In contrast, Rule 23 class members become party to the litigation through no action of their own, and are bound by its results.

<u>Mooney</u>, 54 F.3d at 1214.

The Fifth Circuit has not ruled which method the courts should use to determine whether plaintiffs are sufficiently "similarly situated" to advance their claims together in a single action under Section 216(b). <u>Acevedo</u>, 600 F.3d at 518-19. Although it has stated that not all class action standards are applicable to Section 216(b) actions, the court has explicitly left open the question of whether the <u>Lusardi</u> approach, the <u>Shushan</u> approach, or some third approach should be used in determining whether employees' claims are sufficiently similar to support the maintenance of a representative action. <u>Id.</u> (citing <u>Mooney</u>, 54

F.3d at 1216; LaChapelle v. Owens-Ill., Inc., 513 F.2d 286, 288 (5th Cir. 1975)).

However, most courts in this district follow the Lusardi approach in suits brought under Section 216(b). See, e.g., Tolentino v. C & J Spec-Rent Servs., Inc., 716 F. Supp. 2d 642, 646 (S.D. Tex. 2010) (collecting cases). The Lusardi approach is consistent with Fifth Circuit dicta stating that the two-step approach is the typical manner in which these collective actions proceed. Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 915 n.2 (5th Cir. 2008). The Fifth Circuit has also stated that "[t]here is a fundamental, irreconcilable difference between the class action described by [Rule 23] and that provided for by [Section 216(b)]," i.e., the "opt out" procedure for class members under Rule 23 as opposed to the "opt in" procedure under Section 216(b). LaChapelle, 513 F.2d at 288; see also Donovan v. Univ. of Tex. at El Paso, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The FLSA procedure, in effect, constitutes a congressionally developed alternative to the [Rule 23] procedures."). This court, therefore, will analyze Plaintiff's claims using the Lusardi method.

The present case is at the "notice stage" of the Lusardi analysis. At this stage, the court's decision is "made using a fairly lenient standard;" a plaintiff need only make a minimum showing to guide the court's determination whether to issue notice to potential class members. Mooney, F.3d at 1214.

In the absence of Fifth Circuit guidance on the appropriate test to use at the notice stage of the <u>Lusardi</u> analysis, courts are split on the appropriate elements to consider in determining whether to grant conditional certification. Some courts use three elements, requiring a plaintiff to show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. <u>See, e.g.</u>, <u>Cantu v. Vitol, Inc.</u>, No. H-09-0576, 2009 WL 5195918, at *4 (S.D. Tex. Dec. 21, 2009) (unpublished); <u>Tolentino</u>, 716 F. Supp. 2d at 653. Other courts, however, have rejected the third, non-statutory element. <u>See, e.g.</u>, <u>Dreyer v. Baker Hughes Oilfield Operations, Inc.</u>, No. H-08-1212, 2008 WL 5204149, *3 (S.D. Tex. Dec. 11, 2008) (unpublished); <u>Heckler v. DK Funding, LLC</u>, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007).

The court agrees with the latter camp that Plaintiffs need not present evidence of the third element at this stage of the certification process. There are several reasons for this. First, as already stated, this element is not a statutory requirement at this stage. <u>See</u> 29 U.S.C. § 216(b). Second, this element has not been required, or even discussed, by any higher court opinion that this court has been able to find or to which the parties have cited. Rather, the Fifth Circuit's discussion of the <u>Lusardi</u>

approach only requires, at the first stage, that "putative class members' claims [be] sufficiently similar to merit sending notice of the action to possible members of the class." See Acevedo, 600 F.3d at 519 (citing Mooney, 54 F.3d at 1213-14).

Third, unlike under Rule 23, there is no numerosity requirement in an FLSA class action lawsuit under the Lusardi approach. See, e.g., Badgett v. Tex. Taco Cabana, L.P., No. A-05-3624, 2006 WL 367872, at *2 (S.D. Tex. Feb. 14, 2006) (Lake, J.) (unpublished) (citing Mooney, 54 F.3d at 1214, n.8) ("[A]t the notice stage [in an FLSA action using the Lusardi approach], courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." (internal quotations omitted)).

Finally, this element, requiring evidence of purported class members who are willing to join a class action before an appropriate class is even determined, is dissonant with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes. See Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985). Liberally construing the FLSA to effect its purposes, the court finds that it is enough for Plaintiff to present evidence that there may be other aggrieved individuals to whom a class action notice should be sent, without requiring evidence that those individuals actually wish to join the lawsuit.

Based on these considerations, the court will address only the

first two elements of the Lusardi test.

### III. Analysis

Defendants urge the court to reject Plaintiffs' request for conditional class certification. They argue that: (1) Plaintiffs have not offered substantial evidence of a common policy or plan; and (2) Plaintiffs cannot show personal knowledge of potential class members similarly situated to Plaintiffs. The court considers Defendants' arguments in turn.

Plaintiffs claim they are similarly situated to "all non-exempt law enforcement officers" within Precinct 3.[25] Plaintiffs allege that all officers were subject to the same common policy: that all officers were required to close out investigation scenes, draft incident reports, work community events and attend community meetings, and be on call outside of their regularly scheduled shifts without appropriate compensation.[26]

Defendants argue that Plaintiffs have failed to offer evidence of a single decision, policy, or plan necessary to meet even Lusardi's lenient standard. See McKnight v. D. Houston, Inc., 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010). To meet the "similarly situated" element of the Lusardi test, Plaintiffs must show some identifiable factual nexus that connects Plaintiffs to prospective class members via a common policy or plan. See id. at 803; Prater

---

[25] See Doc. 21, Pls.' Mot. to Certify Class p. 8.

[26] See id.

v. Commerce Equities Mgmt. Co., Inc., No. H-07-2349, 2007 WL 4146714, at *5 (S.D. Tex. Nov. 19, 2007) (unpublished).

In support of a common plan or policy, Plaintiffs state in their affidavits that "the management team did not look favorably upon deputies reporting time worked outside of their scheduled shift."[27] Both affidavits state that Plaintiffs knew that "most of [the other precinct officers] worked more than forty hours in a workweek."[28] Plaintiffs additionally include testimony from Wilson's criminal trial, where an officer testified that if he worked more than eight hours in a day, he would take an equivalent amount of time off during that time period and report eight hours worked each day.[29]

Defendants have responded by providing evidence that the Harris County Personnel Regulations require officers to submit their own timesheets and self-report all hours worked.[30] Section 19.03 of the regulations establishes a grievance policy that specifically includes "[v]iolation of the County compensatory time policy."[31] Plaintiffs each signed acknowledgments indicating that

---

[27] See Doc. 21-1, Ex. A to Pl.'s Mot. to Certify Class, Aff. of Lindsey p. 3, Doc. 21-2, Ex. B to Pl.'s Mot. to Certify Class, Aff. of Wilson p. 3.

[28] See Doc. 21-1, Ex. A to Pl.'s Mot. to Certify Class, Aff. of Lindsey p. 3, Doc. 21-2, Ex. B to Pl.'s Mot. to Certify Class, Aff. of Wilson p. 3.

[29] See Doc. 21-3, Ex. C to Pl.'s Mot. to Certify Class, Test. of Tim Edmonds dated May 19, 2015.

[30] Doc. 27-1, Ex. A-1 to Defs.' Mot. in Opp'n to Class Certification, Harris County Personnel Regulations § 7.031.

[31] See id. § 19.031.

they received copies of the personnel regulations and understood that the regulations governed their employment.[32]

Plaintiffs claims do not offer sufficient evidence of a common plan or policy to deny all officers overtime compensation. Officers self-reported their time sheets, and Plaintiffs have not explained that Defendants knew or should have known that any officers were actually working overtime hours without compensation. See Nieddu v. Lifetime Fitness, Inc., 977 F. Supp. 2d 686, 699-700 (S.D. Tex. 2013). An employee has a duty to notify his employer when he works more than forty hours per week. See Von Friewalde v. Boeing Aerospace Operations, Inc., 339 F. App'x 448, 459 (5th Cir. 2009) (unpublished). Defendants have provided evidence that they paid time and a half for reported hours worked beyond forty hours per week, and had a grievance policy in place when officers disagreed with pay decisions.[33] When an employer has and enforces appropriate pay policies, courts are reluctant to grant conditional certification. See Nieddu, 977 F. Supp. at 703.

Although Plaintiffs each state that they believe that most officers worked more than forty hours, neither Lindsey nor Wilson buttress these assertions with any factual support. While Lindsey states that he personally observed "many time records" that showed

---

[32] See Doc. 27-1, Ex. A-4, A-5 to Defs.' Mot. in Opp'n to Class Certification, Acknowledgment Forms signed by Lindsey and Wilson.

[33] See Doc. 27-1, Ex. A to Defs.' Mot. in Opp'n to Class Certification, Aff. of Jill Harrison pp. 2-3.

officers reporting working forty hours per week, he does not explain how he knew that these officers actually worked more time than the officers reported. By contrast, Plaintiffs' witness testimony indicated that when an officer in Precinct 3 worked more than eight hours in a day, he would take comparable time off later in the pay period.[34] Assuming the officer's statement is true, officers did not regularly work over forty hours per pay period as Plaintiffs allege. Plaintiffs thus have not produced any personal knowledge indicating that officers actually worked or failed to report overtime hours. See Clark v. City of Ft. Worth, 800 F. Supp. 2d 776, 780 (N.D. Tex. 2011) (holding that an assertion that other officers worked more than forty hours and failed to receive overtime pay was conclusory and insufficient to support class certification).

Even in the event that Plaintiffs could prove the existence of a common policy or plan, Defendants argue that Plaintiffs cannot show that any potential class members are similarly situated with respect to their job requirements and pay provisions. Job positions "need not be identical," but must be similar enough to arise under circumstances that apply equally to all potential class members. Nieddu, 977 F. Supp. 2d at 691; Tolentino, 716 F. Supp. 2d at 647.

---

[34] See Doc. 21-3, Ex. C to Pl.'s Mot. to Certify Class, Test. of Tim Edmonds dated May 19, 2015.

Lindsey worked as a Lieutenant in the Patrol Division and Wilson worked as a Deputy in the Community Service Division of Precinct 3 at the time of their terminations.[35] Plaintiffs seek to form a class composed of all officers who worked for Precinct 3. Defendants point out that the precinct employs officers across several departments, including the warrant, civil, and community service divisions.[36] These divisions performed a variety of broad functions, including the transportation of criminals, the conducting of foreclosure sales, and regular police patrols.[37]

Neither Lindsey nor Wilson provide detailed information regarding their everyday duties, but Lindsey states that "while serving as a supervisor," he was unable to end his shift until the officers reporting to him completed their work.[38] Lindsey, in his position as Lieutenant, therefore supervised patrol officers.[39] Wilson, in his position as a community services deputy, attended civic clubs, homeowner's associations, and similar community events.[40] While individuals may have slight differences in job

---

[35] See Doc. 3, Pls.' 1st Am. Compl. pp. 5-7.

[36] See Doc. 27-2, Ex. B to Defs.' Mot. in Opp'n to Class Certification, Aff. of Jonathan Moore p. 2.

[37] See 27-5, Ex. E to Defs.' Mot. in Opp'n to Class Certification, Aff. of Deborah Jones p. 2.

[38] See Doc. 21-1, Ex. A to Pl.'s Mot. to Certify Class, Aff. of Lindsey p. 3.

[39] See 27-2, Ex. B to Defs.' Mot. in Opp'n to Class Certification, Aff. of Jonathan Moore.

[40] See Doc. 27-2, Ex. B to Defs.' Mot. in Opp'n to Class Certification, Aff. of Jonathan Moore p. 5.

duties, significant variation in duties will prevent a court from certifying a class as similarly situated. See Villarreal v. St. Luke's Episcopal Hosp., 751 F. Supp. 2d 902, 919 (S.D. Tex. 2010) (finding that four hospital IT employees' duties were too specialized to find them similarly situated to more general IT workers).  Here, Plaintiffs' duties are not similarly situated to other officers or to one another as required for conditional class certification.  See Nieddu, 977 F. Supp. 2d at 705.

Because Plaintiffs cannot meet their minimal burden by showing a common policy or plan or that a potential class contains similarly situated individuals, Plaintiffs have failed to meet even the lenient standard of conditional class certification.[41]

### IV. Conclusion

Based on the foregoing, the court **DENIES** Plaintiff's Motion for Conditional Class Certification.  Individuals interested in asserting FLSA claims may move to intervene as individual plaintiffs if they choose.

**SIGNED** in Houston, Texas, this 6th day of November, 2015.

_____
U.S. MAGISTRATE JUDGE

---

[41] Because the court denies Plaintiffs' Motion to Certify Class, the court need not rule on Defendants' specific objections to Plaintiffs' evidence and proposed class.